875 F.2d 316
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Mary Bracken POLK, Plaintiff-Appellant,
v.
MONTGOMERY COUNTY, MARYLAND; Denise Dodson Thompkins,
Defendants-Appellees,
and
Montgomery County Police Department; Bernard D. Crooke,
Individually and as Chief of Police, Montgomery County,
Maryland; Officer Joseph Beddick, Montgomery County Police
Department; Department of Corrections and Rehabilitation of
Montgomery County, Maryland; Gary B. Blake, Individually
and as Director of Montgomery County Department of
Corrections and Rehabilitation; Samuel F. Saxton,
Individually and as Warden of Seven Locks Detention Center;
Rosa Lynn, Individually and as Supervising Matron of Seven
Locks Detention Center; James A. Young, Individually and as
Sheriff of Montgomery County, Maryland, Defendants.
 Nos. 88-1115L, 88-1152.
 United States Court of Appeals, Fourth Circuit.
 Argued: Jan. 12, 1989.
Decided: May 15, 1989.
 
 L. Palmer Foret (Virginia M. Burke, Carr, Goodson & Lee, P.C., on brief), for appellant.
 Carole Arnita Jeffries, Suzanne Levin (Clyde H. Sorrell, on brief), for appellees.
 Before HARRISON L. WINTER, Chief Judge, and ERVIN and WILKINSON, Circuit Judges.*
 PER CURIAM:
 
 
 1
 Mary Bracken Polk sued to recover damages and later sought attorney's fees for an unconstitutional police strip search. She was awarded nominal damages and her request for attorney's fees was allowed only in part. She appeals, contending that the district court erred in three respects. First, Polk asserts that it was error for the court to give the jury a nominal damages instruction. Second, Polk contends that the court's denial of her motion for a new trial after the jury awarded her only nominal damages was an abuse of discretion. Third, Polk argues that it was an abuse of discretion for the district court to award her only approximately 4% of the attorney's fees she sought.
 
 
 2
 We are not persuaded by any of Polk's contentions and, accordingly, we affirm.
 
 I.
 
 3
 Polk was mistakenly arrested January 21, 1981, and taken to Maryland's Montgomery County Detention Center (Center). There, without probable cause and under threat of force, she was strip searched by Denise Dodson, a correctional officer. In the course of this search, Polk was required to undress completely and to assume various positions in order to present her vaginal and anal areas to Dodson's scrutiny. Polk was then placed alone in a jail cell overnight and released the next day.
 
 
 4
 In January, 1982--three months after we ruled in Logan v. Shealy, 660 F.2d 1007 (4 Cir.1981), cert. denied, 455 U.S. 942 (1982), that strip searches performed without probable cause were unconstitutional--Polk filed suit against Montgomery County and eight other defendants, alleging, inter alia, that she was strip searched in violation of her constitutional rights and seeking actual and punitive damages.
 
 
 5
 Four months later, one Vivian A. Smith filed a class action suit against the Center on behalf of herself and others who had been strip searched without probable cause while temporary detainees at the Center. Polk chose not to join this Fed.R.Civ.P. 23(b)(3) "opt in" class action.
 
 
 6
 In January, 1984, the district court dismissed Polk's claims against all the defendants except Montgomery County and Dodson. Noting that the presiding judge in the Smith class action had ruled the searches in that case unconstitutional, the court denied Montgomery County's motion for summary judgment as to the constitutionality of the search.
 
 
 7
 Polk thereupon filed a motion for summary judgment, relying on the doctrine of offensive collateral estoppel to argue that the holding of unconstitutionality in Smith required a ruling in her favor on this issue. The district court granted this motion, and the case was set for trial beginning September 15, 1984. On that date, the parties entered a consent judgment with the right to appeal preserved. On appeal, we ruled that application of Smith to Polk's claim via offensive collateral estoppel was improper. See Mary Bracken Polk v. Montgomery Co., et al., No. 84-2205(L), slip op. at 14-17 (4 Cir. February 6, 1986).
 
 
 8
 On remand, Montgomery County sought consolidation, which was granted over Polk's opposition after the defendants filed a stipulation conceding that the strip search was unconstitutional. The Smith class action settled just prior to trial. Polk declined to settle, and her case went to trial solely on the issue of damages.
 
 
 9
 At trial, Dodson testified that the search of Polk took forty-five minutes, instead of the usual fifteen to twenty, "because [Polk] was upset ... [and] was crying." Dodson also stated that, when Polk refused to undress, Dodson said to her:
 
 
 10
 [W]hat would you rather do, strip for me or strip in front of two male officers? If you won't strip, I'm going to have to have them come down hold you while I strip you.
 
 
 11
 At that point, Dodson testified, Polk began to undress.
 
 
 12
 Polk testified that she "was crying" during the search, "was very upset," "felt humiliated and completely defaced," was "panicky," feared "Dodson's remarks ringing in [her] ears about two male guards" forcing her to submit to the search if she did not comply, and "was very frightened, very embarrassed, very humiliated, very scared." Polk's treating psychologist testified that she experienced "very serious embarrassment," "a sexual kind of embarrassment of exposure." Similar testimony was received from Polk's daughter, Jane Decker, from Polk's work supervisor, Barbara Massey, and from Polk's friend, Dr. James Meyerhoff. Polk offered no evidence of medical or other expenses incurred as a result of the search.
 
 
 13
 In response, the defendants presented evidence that Polk had suffered no long-term detrimental effects or permanent damage as a result of the incident. Dr. Willie Hamlin, defendants' expert, testified that Polk suffered no post-traumatic stress disorder or other physical manifestations of trauma. Hamlin reported, moreover, that Polk told him that she was "angry and sarcastic" during the search, not shocked and humiliated.
 
 
 14
 At the close of the trial, the court instructed the jury that it must return a verdict for Polk and assess her damages, but, should it find that Polk had proved no damages, that it could award her nominal damages of one dollar. The jury returned its verdict for Polk and awarded her this amount. The district court denied Polk's subsequent motion for a new trial.
 
 
 15
 After consideration of Polk's petition for attorney's fees under 42 U.S.C. Sec. 1988, the district court found that Polk was the "prevailing party" under the statute and that the lodestar figure in her petition was accurate and reasonable. The court then awarded Polk approximately 4% of the amount she sought.
 
 II.
 
 16
 Polk first challenges the district court's instruction to the jury that it could award nominal damages if it determined that Polk had not been injured by the strip search. Polk contends that defendants offered no evidence to refute her claim that she suffered serious emotional harm during the search. She maintains, accordingly, that it was prejudicial error for the district court to mention the possibility of an award of nominal damages.
 
 
 17
 An award of nominal damages is inappropriate where deprivation of a civil right has caused actual, probable injury. See Memphis Community School Dist. v. Stachura, 477 U.S. 299, 308 n. 11 (1986); Lancaster v. Rodriguez, 701 F.2d 864 (10 Cir.), cert. denied, 462 U.S. 1136 (1983). And an improper instruction on damages--such as a nominal damages instruction given in a case where no possibility for nominal damages exists--can be so prejudicial as to warrant a new trial. See Call Carl, Inc. v. B.P. Oil Corp., 554 F.2d 623, 631 (4 Cir.), cert. denied, 434 U.S. 923 (1977).
 
 
 18
 In the present case, however, the giving of a nominal damages instruction was proper, because the evidence of emotional injury experienced at the time of the strip search was conflicting. Defendants presented uncontroverted evidence that the search caused Polk no long-term psychological injury. They also presented Hamlin's report, which indicated that Polk told him that she was "angry and sarcastic" during the search, not shocked and humiliated. Although, as Polk contends, this report was not necessarily inconsistent with her account, the jury was not required so to conclude.
 
 
 19
 Moreover, inconsistencies in Polk's testimony, as well as her inability to remember certain facts and circumstances related to her arrest, could reasonably have cast doubt on the credibility of her assertion that she experienced severe mental anguish and humiliation during the strip search. In addition, Polk's psychologist testified that, in talks with Polk after the incident, he could not distinguish anger, mental anguish, or emotional distress specifically resulting from the search, as opposed to the search in combination with the mistaken arrest. Thus, conflicting descriptions of Polk's reaction to the search were presented to the jury. The jury was, of course, not obligated to believe Polk's version.
 
 
 20
 In our view the evidence raised a disputed issue of fact whether Polk suffered any compensable emotional injury at all. Consequently, we conclude that the giving of a nominal damages instruction by the district court was not erroneous.
 
 III.
 
 21
 Polk next contends that the district court should have granted her motion for a new trial under Fed.R.Civ.P. 59(a) on the ground that the jury's award of one dollar was against the clear weight of the evidence. This is so, Polk claims, because her evidence of emotional harm suffered at the time of the search was unrefuted.
 
 
 22
 "[A] motion for a new trial is addressed to the sound discretion of the trial judge and his action thereon is not reviewable as to an error of fact except in a case of clear abuse of discretion or in the most exceptional circumstances." Williams v. Nichols, 266 F.2d 389, 391 (4 Cir.1959). Nonetheless, "a trial judge has a duty to set aside a verdict and grant a new trial even though it is supported by substantial evidence, 'if he is of the opinion that the verdict is against the clear weight of the evidence or is based upon evidence which is false or will result in a miscarriage of justice....' " Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888, 891-892 (4 Cir.1980) (quoting Williams, 266 F.2d, at 392).
 
 
 23
 In denying Polk's motion, the district court found that it could not conclude that "the verdict ... is inconsistent with the testimony relating to damages." Polk v. Montgomery County, et al., Civ. No. Y-82-194 (D.Md. April 22, 1988). The court concluded that "the verdict ... was not inconsistent with the weight of the evidence." Id.
 
 
 24
 Polk does not assert that the district court employed the wrong legal standard in denying her motion. Cf. Williams, 266 F.2d, at 392. Rather, she argues that the court's application of the correct standard was so erroneous as to produce a miscarriage of justice. She contends that, far from being supported by the weight of the evidence, the jury's verdict was supported by no evidence whatsoever, and so went completely against the weight of the evidence.
 
 
 25
 As we pointed out in Part II, the evidence of Polk's injuries, if any, was conflicting. Moreover, as the district court noted, the jury was not required to believe Polk's testimony and it evidently did not do so. See Polk, supra. It follows that it was not an abuse of discretion for the district court to deny Polk's motion for a new trial.
 
 IV.
 
 26
 Finally, Polk contends that it was error for the district court to award her only approximately 4% ($4,651.86) of the attorney's fees she requested ($113,107.31) after finding her the prevailing party and determining that her lodestar figure was accurate and reasonable. The district court cut off Polk's attorney's fee award as of the date that her lawyers became "aware of the opportunity and significance of the preliminary injunction in Smith." See Polk v. Montgomery County, et al., Civ. No. Y-82-194, slip op. at 11 (D.Md. July 5, 1988). The court's reasoning was that Smith established the invalidity of the strip search, and the only real issue remaining was Polk's damages, if any. The district court then cut the remaining fee award by 75% to reflect "the limited success of plaintiff's case." Id. at 11-12. The court noted that Polk refused to join the Smith class and refused an award of $31,000 prior to trial, stating that Polk "took her chances and lost the large damage award she sought." Id. at 10. Thus, the district court based its reduced fee award on two factors: Polk's failure to join the Smith class action, and the nominal damages awarded at trial.
 
 
 27
 Polk argues that the first of these factors is an inappropriate basis for reducing a fee award. She contends that allowing a reduction on this basis penalized her decision to take advantage of her right to remain outside a Fed.R.Civ.P. 23(b)(3) class. She argues further that it was only because of defendants' persistence in contending that they had not violated her rights that the suit lasted as long as it did. As to the second factor, Polk admits that it may be an appropriate basis for reduction of an award, but that it cannot justify a reduction of the magnitude seen in this case.
 
 
 28
 It is within a district court's discretion to determine attorney's fees. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Moreover, a district court may reduce an award to account for limited success. See id. at 436, 440; see also Van Sant v. United States Postal Service, 805 F.2d 141 (4 Cir.1986), cert. denied, 480 U.S. 935 (1987) (reducing a plaintiff's request for $194,162.47 in attorney's fees to $5,000.00); Bonnes v. Long, 599 F.2d 1316, 1318 (4 Cir.1979). We believe that, under the circumstances presented here, the district court's reduction based on Polk's limited success was not an abuse of discretion.
 
 V.
 
 29
 We hold that the district court's nominal damages instruction was not erroneous. We hold, further, that neither the court's denial of Polk's motion for a new trial nor its reduction of Polk's attorney's fees award was an abuse of discretion.
 
 
 30
 AFFIRMED.
 
 
 
 *
 After submission of this appeal, Judge Winter relinquished the chief judgeship, retaining, however, his status as an active circuit judge